## COMMISSIONERS OF HIGHWAYS
### v.
## WILLIAM YOUNG.

*Highways—Commissioners—Injunction against — Drainage — Servient Heritage.*

1. The same rules apply to the drainage of highways by the commissioners, as to the drainage of farms.

2. Upon a bill filed by an adjacent landholder to secure an injunction restraining highway commissioners from cutting a proposed ditch by the side

of the highway, it appearing that the same would cast no appreciable amount of water upon complainant's land to which it was not already servient in a state of nature, and the evidence showing that the damages complained of were conjectural and imaginary rather than real, this court holds that the same should have been dismissed for want of equity.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Knox County; the Hon. A. A. SMITH, Judge, presiding.

This is a bill for injunction by the appellee as the owner of the north 440 acres of section 23 in Maquon township, to restrain the appellants, as commissioners of highways, from completing a ditch in the south side of the highway, adjoining the land of appellee, extending west from the east draw to the west draw on Robert Harper's land, a distance of about forty-five rods.   The original bill was filed December 6, 1887, and charges appellant with cutting and preparing to cut a ditch four feet wide and eight feet deep on the highway leading from Spoon river through Salem township and on the north side of appellee's land, which ditch, if allowed to be made, would drain one-third of said township and cast on his land such accumulated water, taking the same out of its natural course of drainage, and inflicting upon his land unusual burdens, flooding the same and causing irreparable damage thereto, upon which bill was granted the injunction in this case.   On the 30th of December thereafter, appellee filed an amended bill in which he alleged " that no water was precipitated on the surface of the ground from the public highway, nor from the land of Robert Harper across the said highway onto or upon the lands of appellee.

" That a drain or dry slough in which water does not run upon the surface of the ground, runs from the roadway to the north of appellee's land in a semi-circular direction northward over the land of said Harper, and thence returning across the highway southward over appellee's land."

" That for a distance of a mile east of the school house on said highway, the road had been so graded and ditched that

in time of freshets a large portion of the water there, is diverted from its natural channels, brought down to appellee's land, and turned into the east Foster culvert. That in May or June prior to filing the bill, the ditch at the south side of the Foster culvert was deepened about one foot lower than the bottom of that culvert, so that the water in time of freshet had to stand or remain in the ditch, or make its way in some other direction. That the south roadside ditch by his land extends along west to the east Harper draw, where appellants intend to make the ditch complained of. That by excavating about one foot in depth for about fifteen rods, the water which comes to the Foster culvert from the east will be carried by such ditch to the west Harper draw, and not through the Foster culvert." The bill further charges on information and belief " that appellants intend and propose, after excavating the ditch complained of, to deepen the same at the ' old orchard ' and bring all the water that accumulates on the said highway to the east and cast the same down upon appellee's land at the west Harper draw, and that appellants are cutting this ditch with the intent of collecting the surface water from the lands of appellee on the north and east, and discharging the same, in an unnatural body, upon the land of appellee, at one place, where no water now runs upon the surface, whereby irreparable damage is occasioned, " etc.

Appellants moved the trial court to dissolve the injunction for want of equity apparent on the face of the bill, and filed their answer, by which they admit that as such commissioners of highways they had cut a ditch along the said highway on the south side, adjoining the land of appellee between the east and west Harper draws, of about one hundred yards in length, which was proper and necessary for a grade ditch for the necessary drainage and protection of the highway, and not more than one hundred yards in length, and they did not intend or propose to dig the same of greater length or at other points on the line of the said highway; that when the said ditch was completed the water therefrom would run into grade ditches and natural depressions then already existing; that the

same was dug solely for the protection and improvement of the highway, and in a suitable and proper manner, and not as set forth in the bill of complaint.  "Deny that this ditch as made would, or could, or was intended to drain any part of Salem township, or throw upon the land of appellee any increase or unnatural flow of water, or cause any damage to appellee whatever.  Deny that the ditch as dug or proposed will drain any land or grade ditch east of the 'old orchard,' so-called.  Deny that this ditch was dug or intended to connect with or change the surface water northward across the highway, or eastward in any way to interfere with, or change the drainage from what it was before the said ditch was dug, or from what the drainage had theretofore in a state of nature been.  Avers the truth to be that the proposed ditch as designed and dug will simply carry off the surface water, quite inconsiderable in quantity, which flows from the east in the grade ditch for about one hundred rods in times of heavy rainfall, and such only as naturally flows therein, and from the land of appellee, which was wont to accumulate in depressions upon the land of appellee, to the injury of the highway and appellee as well, in times of unusual rainfall or freshet; that if any of such surface drained water flows onto appellee's land, it is because it is the natural depression in the land of appellee and the natural watercourse to which appellee's lands were servient.  That the ditch was dug in the performance of their duties as commissioners of highways in said township, and because in their best judgment the same was necessary to the proper care and improvement of such highway at that place, and for no other or different reason.  Deny that they have or intend to enter, with or without force, any lands of appellee, to dig any ditch, or for any purpose whatever.  Deny that the ditch, when dug and completed as contemplated, will cause irreparable injury (or any whatever) to appellee, as he has alleged, and deny that appellee, upon the case made by his original and amended bill, was or is entitled to any relief whatever," and asks that the same advantage and benefit may be accorded them therefor as if they had pleaded or demurred thereto.

Upon the hearing in the court below a decree was entered for the appellee sustaining the original and amended bill and granting the relief therein prayed, and made said injunction perpetual, etc., and directed that appellants pay costs, etc., and the cause is before this court on appeal from that decree.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, and T. L. MC-GIRR, for appellants.

Messrs. GEORGE W. THOMPSON and FLETCHER CARNEY, for appellee.

UPTON, P. J.  It is apparent from the evidence in this record that the land over which the highway in question is constructed, passing from east to west by the premises of appellee, gradually falls from the west line of Salem township down to the west line of appellee's land.

The west end of the ditch complained of, at its outlet, at the west Harper draw, is only some twenty-five feet lower than the land nearly two miles east of it, at the Salem township line. The land on the north of the road is higher than on the south side, the divide or watershed being a little to the north of this highway and nearly parallel with it in its general course.

The highway is not crossed by any running stream for the entire distance above mentioned, the surface of the ground being substantially a flat place descending gradually to the west and south.  The natural course of water running on the surface from section 13 passes down the highway, and at Wasson's, on section 14, there is a natural draw, and another at Cummings', near the northeast corner of section 14, carrying the water accumulating in the highway to the east thereof, both of which bear southerly; but the general fall of the land is to the west.  On section 13 the divide is about sixty rods north of the highway.  At the school house on the southeast corner of section 14, and near the northeast corner of section 23, on the land of appellee, down to the haystacks, or the "old orchard," so called, on appellee's premises, the highway crosses the divide or watershed; the land on the south side is highest, and the drainage is to the north and northwest, onto section

14, the ditch complained of in no manner interfering with the drainage at that point. Upon the land of appellee in section 23 and on the south of the highway is a natural depression in the ground, into which is gathered, in heavy rainfalls or freshets, some water, the drainage from which is north and northeast upon the S. E. ¼ of Sec. 14, where there is a natural draw from this depression onto Mrs. Foster's land in section 14, and is carried across the highway through a wood box culvert, and returning again it crosses the highway in a culvert a few rods to the west at the north of the old orchard on the land of appellee. At these Foster culverts the depression in the natural surface of the ground is slight, the rise between the two culverts being at the east culvert only, about eighteen inches above the lowest depression at the west culvert.

From the point at the old orchard the ground slopes or falls to the west quite perceptibly, until the natural depression at the east Harper draw is reached, where there is a low piece of ground in section 23 on the premises of the appellee, the natural drainage from which is to the north and across the highway between the house and barn of Harper. The water-way is in this draw, or crosses the highway in a box culvert and curves around westerly and southerly in the shape of a bow, crossing the highway again a short distance to the west upon the land of appellee, through a wooden box culvert. The distance on the highway between these two last mentioned culverts, at the east and west draws, is about forty-five rods, and the highest point in the highway between these culverts is about four and one-half feet above the natural surface of the ground at the west draw. Between these two culverts or draws is the ditch in controversy.

The depressions mentioned above are dry sloughs, into which in times of excessive rainfall, or freshets, surface water is drained, but carrying no water at other times, and but a small flow at any time, and then only for a short period.

For some years prior to 1887, there had been box culverts across the highway at these east and west Harper draws. By agreement between Harper and appellee, a tile drain had been laid from the depression in appellee's field south of and

near the east Harper draw, along its course, curving around in
Harper's field and back across the road at the west Harper
draw, into appellee's field south of the highway, where its sur-
face outlet was in appellee's field in a dry slough or natural
depression. Harper and appellee, regarding these culverts at
the east and west draws no longer needed, agreed to their re-
moval, and their use was practically thereafter discontinued,
and they were wholly or in part banked up or filled with dirt
at the ends, one being wholly removed and filled up.

In this condition this highway and the culverts remained,
leaving the highway wet and muddy in its depressions, cut
up with ruts in low places, until spring or early summer of
1887, when the appellants, in the discharge of their duty as
such highway commissioners, directed one of their number,
Miller, to put this highway in good and substantial repair.
In so doing he commenced at the northwest corner of section
23 above described and worked east, using the earth plowed
from the sides of the highway to raise the bed of the track,
and the ditches caused by such excavation for drainage of the
road bed, according to the natural inclination of the ground.

In the spring prior to the commencement of the repairs last
alluded to, these appellants had put in a new box culvert at the
west Harper draw, and Miller filled above it in making the
subsequent repairs. At the east Harper draw, where the cul-
vert had been taken out, spring rains had washed the road and
caused a bad and muddy place in the road for the travel to cross.
The appellants endeavored to agree with appellee and
Harper as to the method to be adopted to dispose of this sur-
face water and protect the highway and the public in its use.
The water which affected the highway at this point came from
a depression on the land of appellee on the south side of the
highway before mentioned, and appellee, finding the tile drain
above described not sufficient to carry the water in time of
freshet, so as to prevent a slight overflow on his own land,
desired the appellants in repairing such highway to replace
the culvert at the east draw (which had been removed by his
agreement or consent when the tile drain was put in) across
the highway. To this Harper refused his assent, claiming his

previous contract with appellee to remove this culvert on putting in the eighty rods of tile drain, which he had then completed.

To obviate, as they believed, all difficulty, protect the public and discharge their duty, the appellants concluded to and did extend the grade ditch on the south side of the highway, west, and connect by this short and direct course the east draw with the west draw at Harper's, carrying the small amount of surface water as should be required, directly across about forty rods, from one end of the bow to the other, instead of around some eighty rods, and depositing it at the same point in the west draw, as it would have been before the ditch was dug.

It is apparent, therefore, if we are correct in our conclusion upon the facts, that the flow of the water upon the premises in question in its natural state would be in no manner increased or different, so far as the appellee's rights are concerned, by the digging of the ditch in question, except as such portion of it as might evaporate or be absorbed in its flow around the bow in Harper's field of eighty rods, should exceed the evaporation and absorption in the flow of the same water in the ditch on the roadside for the distance of forty rods—which we must conclude from all the evidence in the record before us would be exceedingly slight and inconsiderable—practically inappreciable.

It need not perhaps be stated, from what has been already said, that the premises of the appellee south of the west Harper draw is the servient heritage, and there is no evidence that appellants have, or intend to cast any water upon the land of appellee to which it is not servient in a state of nature, as before stated. The evidence from some of the appellee's witnesses is, that this method of drainage by cutting the ditch in question, would have been the proper method for farm drainage, and it has been held and we see no reason for a change of opinion, that the same rule should govern in both classes of cases. Com'rs of Highways, etc., v. Whitside, 15 Ill. App. 319; Peck v. Herrington, 109 Ill. 611; Drainage Laws of 1885, Sec. 4. The evidence in the case wholly fails to satisfy our minds that any perceptible damage would

or could accrue to appellee by the digging of the ditch, and a careful examination of the appellee's witnesses, as appears in this record, discloses that the basis upon which any estimate of damages is predicated, is imaginary or conjectural, rather than real. See Graham et al., Com'rs, v. McKusie, decided at this term, not yet reported.

After a careful review of the whole record, we are unable to find any equity in the case, and must therefore reverse the decree of the Circuit Court and remand the cause, with directions to the Circuit Court to dismiss the bill for want of equity.

*Reversed and remanded with directions.*